THE AMERICAN GLUCOSE COMPANY, appellant.

*v.*

THE STATE OF NEW JERSEY, respondent.

1. A statute provided that a tax should be imposed on all corporations except, among others, manufacturing companies carrying on business in this state.—*Held*, not to apply to a company that manufactures glucose and grape sugar in five places in different states, and merely retains an office here for preserving a record of its transactions.

2. The statute also provided that, for default in paying the tax levied, the court of chancery might enjoin the continuance of business by such company, "if a proper case appear."—*Held*, on an application for such injunction, that the court of chancery would not look into the constitutionality of the statute, and that "a proper case appears" when the court is satisfied that the state is not wholly in the wrong.

On appeal from a decree advised by Vice-Chancellor Bird, who filed the following conclusions:

In 1884, the legislature passed a law providing for the imposi-

American Glucose Co. *v.* New Jersey.

tion of state taxes upon certain corporations and for the collection thereof. Different corporations are enumerated and classified, and the imposition to be made on each is fixed. There is added :

"All other corporations under the laws of this state, and not hereinbefore provided for, shall pay a yearly license fee or tax of one-tenth of one per centum on the amount of the capital stock of such corporations; provided, that this act shall not apply to railway, canal or banking corporations, or to savings banks, cemeteries or religious corporations, or purely charitable or educational associations, or manufacturing companies or mining corporations carrying on business in this state."

The state imposed a tax on the capital stock of the respondent of one-tenth of one per centum of its capital stock. Its capital stock, according to its certificate on file, " is $15,000,000." The same is divided into one hundred and fifty thousand shares. The par value of each share is fixed at $100. The certificate then adds :

"The amount with which said company will commence business is $1,000, which is divided into ten shares of the par value of $100 each."

The whole amount of its capital stock being $13,225,000— worth on the face of its own certificate. The assessment was $13,225. This tax has not been paid within the time limited by the act. Hence, the attorney-general asks for an injunction restraining said corporation from exercising its franchise, as by said act he may.

The two principal objections to an order for the injunction are that the company is a manufacturing company and actually carryingon its business within this state, and is therefore exempt; and that the tax imposed is unconstitutional, because imposed upon the entire amount of capital stock named in the certificate ($13,000,000 worth), when the amount of stock actually issued is only one hundred and thirty-two thousand two hundred and fifty shares.

First, does it carry on business in this state, within the meaning of the act? It is a manufacturing corporation. Its own statement is :

"The corporation carries on business in the state of New Jersey, and has at all times, within one year last past; that is to say, it has a factory for the manufacture of grape sugar and glucose at Buffalo, in the state of New York; another at Leavenworth, Kansas; another at Peoria, Illinois; another at Iowa City, Iowa, and another at Tippecanoe City, Ohio. It sells the products of these factories, or some of them, at divers points within the state of New Jersey, making the sales within that state; it holds its business meetings at Camden, within the state of New Jersey, and has regularly since its organization, and it maintains an office at which to transact its business in the state of New Jersey. It purchases materials for its business within the state of New Jersey, and from time to time transports goods within the state of New Jersey, and in other ways carries on business within that state, and has from time to time since its organization."

I can see nothing in all this to bring the company within the exception. Can the object of the law be frustrated by the agents of the company opening an office in this state and transacting the ordinary official business of the company there, registering the same, keeping accounts, and having other agents making sales of their merchandise in the state, while all its real or tangible capital or property of every description is far beyond the reach of the tax collector, in distant states? I think not. Doing business in this state, in the legislative mind, could not have been anything short of carrying on the principal work or business of the corporation within this state; carrying on its business here, in the plain and ordinary acceptation of the term, just as our bankers, potters, iron, cotton, woolen, leather and shoe manufacturers, with all their capital and all their assets here, carry on business. If any other view than this is taken, the legislature has indeed struggled in vain with the numerous corporations which our laws foster and protect, and its work can and doubtless will be rendered absolutely nugatory by every such institution opening an office within this state. The legislature meant to say if the manufacturer establishes his factory in this state and brings here his raw material and converts it into wares, then he shall not be subject to this act. If these things be done, then the state has other laws by which its revenues can be supplied by direct tax upon such factory or buildings, lands, goods and the like.

But it is claimed that both the act of the legislature and this assessment are in conflict with that provision of the constitution

American Glucose Co. *v.* New Jersey.

which declares that "property shall be assessed for taxes under general laws, and by uniform rules, according to its true value." I am not prepared to say that the act in question violates the fundamental law. I am not prepared to say but that, if this corporation had gone to the supreme court by *certiorari* and raised this question, that tribunal would not have declared the law constitutional, and, if it ascertained that the assessment was too great, being upon stock that had no actual existence, would not have taken steps to ascertain the true value, and so secure to the state the tax justly due. I find no authority conferred on this court to proceed further than to grant or refuse an injunction. The statute says "that in addition to other remedies for the collection of such tax it shall be lawful for the attorney-general, * * * whenever any tax due under this act from any company shall have remained in arrears for the period of three months, * * * to apply to the court of chancery for an injunction to restrain such corporation from the exercise of any franchise or the transaction of any business within this state, until the payment of such tax and interest due thereon. * * * The said court is hereby authorized to grant such injunction, if a proper case appear." The power of this court is expressly limited to the granting an injunction. "If a proper case appear," it may grant the writ. It seems to me that a proper case appears when the court is satisfied that the state is not wholly in the wrong. In other words, if it be doubtful whether or not, in a proper tribunal, the tax imposed, or some part of it, might be collected, then the writ should go. This leaves the parties to their legal remedies, and the corporation can have the tax set aside if illegal or unconstitutional, and the state can have the just amount due paid, if the law be sustained.

I will advise an order that an injunction do issue, according to the prayer of the petition.

*Mr. J. D. Bedle,* for appellant.

*Mr. W. Y. Johnson,* for respondent.

Race *v.* Groves.

PER CURIAM.

This decree unanimously affirmed, for the reasons given by the vice-chancellor.